DENNIS J. HERRERA, State Bar #139669
City Attorney
ELIZABETH S. SALVESON, State Bar #83788
Chief Labor Attorney
LAWRENCE HECIMOVICH, State Bar #129688
Deputy City Attorney
Fox Plaza
1390 Market Street, 5th Floor
San Francisco, California 94102-5408
Telephone:    (415) 554-3933
Facsimile:    (415) 554-4248
E-Mail:    larry.hecimovich@sfgov.org

Attorneys for Defendants
CITY AND COUNTY OF SAN FRANCISCO and
HEATHER FONG

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDREW COHEN, and individual; JAMES LEWIS, an individual, <br><br> Plaintiffs, <br><br> vs. <br><br> CITY AND COUNTY OF SAN FRANCISCO, HEATHER FONG, an individual, and DOES 1 - 50, <br><br> Defendant(s). | Case No. C07-06208 EMC <br><br> **DECLARATION OF LAWRENCE HECIMOVICH IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS (F.R.C.P. 12(b)(6))** <br><br> Date:    January 30, 2008 <br> Time:    10:30 a.m. <br> Courtroom:    Hon. Edward M. Chen |

I, LAWRENCE HECIMOVICH, declare as follows:

1.      I am an attorney of record for Defendants the City and County of San Francisco and Heather Fong, Chief of Police of the San Francisco Police Department, in the above-captioned matter. I am admitted to practice law in California and to appear before this Court.  I have personal knowledge of the facts in this declaration, and if called upon to testify, I could and would testify competently to the facts contained herein.

2.      Attached hereto as Exhibit A is a true and correct copy of the First Amended Complaint, which is the operative complaint, in *Harmston, Cohen, Lewis et al. v. CCSF and Heather Fong,* Northern District Case No. C07-01186 SI

3.      Attached hereto as Exhibit B is a true and correct copy of the District Court's November 6, 2007 Order finding misconduct by Plaintiff Cohen and awarding sanctions against Cohen and Plaintiffs' Attorney Waukeen McCoy in *Harmston, Cohen, Lewis et al. v. CCSF and Heather Fong,* Northern District Case No. C07-01186 SI.  Cohen has appealed this Order to the Ninth Circuit Court of Appeal.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.  Executed this 26th day of December 2007 in San Francisco, California.

_____
LAWRENCE HECIMOVICH

# EXHIBIT A

COPY

1  WAUKEEN Q. McCOY, ESQ. (SBN: 168228)
   LAW OFFICES OF WAUKEEN Q. McCOY
2  703 Market Street, Suite 1407
   San Francisco, California 94103
3  Telephone (415) 675-7705
   Facsimile (415) 675-2530

4  Attorney for Plaintiffs
   CLAYTON HARMSTON et al.
5

ENDORSED
FILED
San Francisco County Superior Court

FEB - 1 2007

GORDON PARK-LI, Clerk
BY___ELIZABETH ZALDIVAR
Deputy Clerk

6              SUPERIOR COURT OF THE STATE OF CALIFORNIA

7                   CITY AND COUNTY OF SAN FRANCISCO

8

| | |
|---|---|
| 9  CLAYTON HARMSTON, an individual; GIGI ) | Case No. 06-454955 |
| 10 GEORGE, an individual; JAMES LEWIS, an ) individual; MIKE EVANSON, an individual, ) | UNLIMITED JURISDICTION |
| 11 ERICK SOLARES, an individual; DAVE ) PARRY, an individual; ANDREW COHEN, ) | FIRST AMENDED COMPLAINT FOR: |
| 12 an individual; NOAH MALLINGER, an ) individual; CARLOS MUSTAFICH, an ) | 1.  RACIAL DISCRIMINATION - CALIFORNIA GOVERNMENT CODE § 12940 |
| 13 individual; LUIS DEJESUS, an individual; ) JAMES D. AHERNE, an individual; JASON ) | 2.  RACIAL DISCRIMINATION - 42 U.S.C. § 2000(e) et seq. (Title VII of the Civil Rights Act of 1964) |
| 14 KIRCHNER, an individual; REGINALD ) SCOTT, an individual; GERALD P. LYONS, ) | 3.  RETALIATION |
| 15 an individual; WENDY HURLEY, an ) individual; HOLLY STOUMEN, an individual;) | 4.  RETALIATION - U.S.C. § 2000(e) et seq. (Title VII of the Civil Rights Act of 1964) |
| 16 CHRISTINE ARNDT, an individual; ) SHAREEF NASIR, an individual, ) | 5.  DEFAMATION |
| 17                                        ) | 6.  INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS |
| 18            Plaintiffs,                 ) | |
| 19     vs.                                ) | |
| 20                                        ) | TWENTY (20) MILLION DOLLARS DEMANDED |
| 21 CITY AND COUNTY OF SAN FRANCISCO,) HEATHER FONG, an individual, and DOES ) | |
| 22 1-50                                   ) | JURY TRIAL DEMANDED |
| 23            Defendants.                 ) | |
| 24                                        ) | |
| 25 _____ ) | |

26

27

28

1

## INTRODUCTION

2          1.       This is an action for damages for Racial Discrimination, Retaliation, Defamation,

3    and Intentional Infliction of Emotional Distress.  This action arises out of events involving

4    Plaintiffs CLAYTON HARMSTON et al. (hereafter "Plaintiffs") and Defendant City and County

5    of San Francisco (hereafter "Defendant" or "THE CITY").  Plaintiffs were employed as Peace

6    Officers by the City and County of San Francisco in San Francisco.  Therefore, jurisdiction is

7    proper in San Francisco County.

8

## THE PARTIES

9          2.       Clayton Harmston ("Harmston") is a non-Asian individual employed by THE

10   CITY as a Police Officer.  THE CITY has employed HARMSTON for six years, both as a police

11   officer and as a Field Training Officer.  In 2003, he received the Medal of Valor and a Purple

12   Heart.  The American Legion named him Officer of the Year.  HARMSTON has also won the

13   California Peace Officers' Association Valor Award.  HARMSTON suffered a pattern and

14   practice of racial discrimination, and other wrongful acts committed by defendants.

15         3.       Gigi George ("George") is a non-Asian individual employed by THE CITY as a

16   Police Officer.  THE CITY has employed GEORGE for eleven years.  Beyond her duties as an

17   Officer, GEORGE has been a liaison between the Police and San Francisco schools, and has

18   worked directly with the Office of the City Attorney.  GEORGE suffered a pattern and practice

19   of racial discrimination, and other wrongful acts committed by defendants.

20         4.       James Lewis ("Lewis") is a non-Asian individual employed by THE CITY as a

21   Police Officer.  THE CITY has employed LEWIS for twenty-four years.  LEWIS has spent his

22   career both as an Officer and as a Housing officer for the San Francisco Police.  LEWIS suffered

23   a pattern and practice of racial discrimination, and other wrongful acts committed by defendants.

24         5.       Mike Evanson ("Evanson") is a non-Asian individual employed by THE CITY as

25   a Police Officer.  THE CITY has employed EVANSON for twenty-five years.  He has served

26   beyond his duties as an officer, acting as a Field Training Officer and Training Coordinator, and

27   as a Weapon of Mass Destruction Instructor.  At the time of his suspension, EVANSON was

28   preparing an officer safety course in response to the recent murder of another Bayview District

1   Police Officer.  As well, Officer EVANSON has received a Bronze Medal of Valor, three

2   Meritorious Conduct Awards, eight Police Commission Commendations, two Unit Citations, and

3   over one hundred Captain's Complimentary Reports.  EVANSON suffered a pattern and practice

4   of racial discrimination, and other wrongful acts committed by defendants.

5        6.     Erick Solares ("Solares") is a non-Asian individual employed by THE CITY as a

6   Police Officer.  THE CITY has employed SOLARES for seven years.  SOLARES has been a

7   dedicated officer, taking part in the Cease Fire Program, as well as undertaking plainclothes

8   positions and participating in the Robbery Apprehension Team, which responds to bank

9   robberies in progress.  SOLARES suffered a pattern and practice of racial discrimination, and

10  other wrongful acts committed by defendants.

11       7.     David Parry ("Parry") is a non-Asian individual employed by THE CITY as a

12  Police Officer.  THE CITY has employed PARRY for eight years.  During his career, PARRY

13  has won the American Legion Police Officer of the Year award (2003), and the Police Officers'

14  Association Medal of Valor (2003).  Parry is also a Field Training Officer.  PARRY suffered a

15  pattern and practice of racial discrimination, and other wrongful acts committed by defendants.

16       8.     Andrew Cohen ("Cohen") is a non-Asian individual employed by THE CITY as a

17  Police Officer.  THE CITY has employed COHEN for eleven years.  During this time, COHEN

18  produced a variety of videos for the Police Department and THE CITY, including documentaries

19  and other satirical videos.  COHEN's superiors and peers encouraged his artistic abilities, noting

20  that they were morale boosters for other officers.  COHEN suffered a pattern and practice of

21  racial discrimination, and other wrongful acts committed by defendants.

22       9.     Noah Mallinger ("Mallinger") is a non-Asian individual employed by THE CITY

23  as a Police Officer.  THE CITY has employed the Plaintiffs for nine years.  As an officer

24  stationed in the Bayview neighborhood, MALLINGER has volunteered beyond his duties as a

25  police officer.  MALLINGER participated in the Police Department's Cease Fire Project, an

26  effort to decrease violence the Bayview neighborhood.  As well, he has taken part in gift drives

27  at Bayview Housing, has taken disadvantaged children to sporting events, and has visited ill

28

1    children in local hospitals.  MALLINGER suffered a pattern and practice of racial

2    discrimination, and other wrongful acts committed by defendants.

3        10.    Carlos Mustafich ("Mustafich") is a non-Asian individual employed by THE

4    CITY as a Police Officer.  THE CITY has employed MUSTAFICH for seven years.  During this

5    time, MUSTAFICH worked in the Cease Fire Project, an effort to decrease violence the Bayview

6    neighborhood.  MUSTAFICH suffered a pattern and practice of racial discrimination, and other

7    wrongful acts committed by defendants.

8        11.    Luis DeJesus ("DeJesus") is a non-Asian individual employed by THE CITY as a

9    Police Officer.  THE CITY has employed DEJESUS for eight years.  During this time,

10   DEJESUS worked in the Cease Fire Project, an effort to decrease violence the Bayview

11   neighborhood.  He also volunteered with the Police Athletic League's fishing program.  As an

12   officer, he received a Medal of Valor, two Police Commission Commendations, and two

13   Meritorious Conduct awards.  DEJESUS suffered a pattern and practice of racial discrimination,

14   and other wrongful acts committed by defendants.

15       12.    James D. Aherne ("Aherne") is a non-Asian individual employed by THE CITY

16   as a Police Officer.  THE CITY has employed AHERNE for eight years.  During this time, he

17   took part in the Cease Fire Project, an effort to reduce violence in the Bayview neighborhood.

18   AHERNE suffered a pattern and practice of racial discrimination, and other wrongful acts

19   committed by defendants.

20       13.    Jason Kirchner ("Kirchner") is a non-Asian individual employed by THE CITY

21   as a Police Officer.  THE CITY has employed KIRCHNER for four years.  During this time, he

22   has been recommended several times for the Medal of Valor.  He has received dozens of

23   Captains' Complimentary Reports, and received a Unit Citation for Work and Valor during the

24   Iraq riots.  KIRCHNER suffered a pattern and practice of racial discrimination, and other

25   wrongful acts committed by defendants.

26       14.    Reginald Scott ("Scott") is a non-Asian individual employed by THE CITY as a

27   Police Officer.  THE CITY has employed SCOTT for six years.  He earned the Medal of Valor,

28   the Chief's Award, and the Humanitarian award during his time at the Police Department.  Prior

1  to his tenure with the San Francisco Police, SCOTT worked in the San Francisco Sheriff's

2  Department. In that position, he was named Deputy of the Year in 1998. SCOTT suffered a

3  pattern and practice of racial discrimination, and other wrongful acts committed by defendants.

4       15.    Gerald P. Lyons ("Lyons") is a non-Asian individual employed by THE CITY as

5  a Police Officer. THE CITY has employed LYONS for thirteen years. During this time, LYONS

6  served as a plainclothes officer at both the Taraval and Bayview Stations. LYONS suffered a

7  pattern and practice of racial discrimination, and other wrongful acts committed by defendants.

8       16.    Wendy Hurley ("Hurley") is a non-Asian individual employed by THE CITY as a

9  Police Officer. THE CITY has employed HURLEY for ten years. HURLEY suffered a pattern

10  and practice of racial discrimination, and other wrongful acts committed by defendants.

11       17.    Holly Stoumen ("Stoumen") is a non-Asian individual employed by THE CITY

12  as a Police Officer. THE CITY has employed STOUMEN for six years. In her career,

13  STOUMEN has undertaken a variety of leadership and training positions, including being a Field

14  Training Officer Instructor at the Police Academy. She also taught an Officer Safety and Field

15  Tactics Course focused on schools and the workplace that all San Francisco Police Officers must

16  take. STOUMEN is also a member of the Cease Fire Program. STOUMEN suffered a pattern

17  and practice of racial discrimination, and other wrongful acts committed by defendants.

18       18.    Christine Arndt ("Arndt") is perceived to be a non-Asian individual employed by

19  THE CITY as a Police Officer. THE CITY has employed ARNDT for eight years. During her

20  career, she has worked undercover and as a uniformed officer, and has on several occasions

21  requested transfers to work in Bayview, one of the most difficult areas for San Francisco Police.

22  She received many Captain's Complimentary Reports, and a Police Commission Commendation

23  Award. ARNDT suffered a pattern and practice of racial discrimination, and other wrongful acts

24  committed by defendants.

25       19.    Shareef Nasir ("Nasir") is a non-Asian individual or perceived to be non-Asian,

26  and employed by THE CITY as a Police Officer. THE CITY has employed NASIR for several

27  years. Plaintiff suffered a pattern and practice of racial discrimination, and other wrongful acts

28  committed by defendants.

FIRST AMENDED COMPLAINT

5

20.     Plaintiffs are informed and believe and thereon allege that THE CITY is a government entity.

21.     Plaintiffs are informed and believe and thereon allege that defendant HEATHER FONG ("Fong") is an individual employed by THE CITY as Chief of Police.

22.     Plaintiffs are ignorant of the true names and capacities of defendants sued herein as DOES 1-50, inclusive, and Plaintiffs therefore sue such defendants by such fictitious names. Plaintiffs will amend this Complaint to allege their true names and capacities when ascertained. Plaintiffs are informed and believe and thereon allege that each of these fictitiously named defendants is responsible in some manner for the occurrences, and that such aforementioned defendants' acts and omissions proximately caused the Plaintiffs' injuries as alleged herein.

23.     Plaintiffs are informed and believe and thereon allege that at all times mentioned herein, each individual defendant was and is the agent, employee and servant of THE CITY and committed the occurrences, acts and omissions complained of herein while acting within the scope of such agency, employment and servitude.   Each defendant is responsible for the occurrences, acts and omissions of each other defendant complained of herein.

## GENERAL ALLEGATIONS

24.     Plaintiffs incorporate by reference the factual allegations of paragraphs 1 through 23 above.

25.     Plaintiffs are informed and believe and thereon allege that THE CITY hired them all as uniformed and plainclothes police officers. Plaintiffs are of various races, including Caucasian, African American, and Latino, but none identifies as Asian. All the Plaintiffs are currently employed by THE CITY.

26.     Plaintiffs are informed and believe and thereon allege that THE CITY and FONG suspended them and otherwise disciplined them and/or subjected them to various adverse employment actions for participating in a satirical video made in late 2005.  That video was intended to be a parody of life as Police Officers assigned to the Bayview-Hunter's Point District of San Francisco. Plaintiffs' supervisors knew of, consented to, and required participation by the

1    Plaintiffs in the video.  Plaintiffs intended the video to be a morale booster at the Bayview-

2    Hunter's Point Station.  THE CITY and FONG did not suspend any of the Plaintiffs' Asian

3    (Chinese-American) co-workers, who also participated in the video.

4        27.    Plaintiffs are informed and believe and thereon allege that because of Plaintiffs'

5    participation in the video, THE CITY and FONG suspended them, and required Plaintiffs to turn

6    in their police IDs, badges, and weapons.  Because of their suspension, Plaintiffs lost significant

7    amounts of pay, accrual of sick leave, vacation time, and other benefits.  Some of the Plaintiffs

8    lost their overtime pay and Field Training Officer pay from the start of their suspension to the

9    present, costing them tens of thousands of dollars in lost earnings.

10       28.    Plaintiffs are informed and believe and thereon allege that before, during, and

11   after their suspensions, THE CITY and FONG publicly insulted Plaintiffs, accusing them of

12   being racist, sexist, and homophobic, which is not true.  In some cases, defendants posted

13   pictures of Plaintiffs alongside the comments, increasing the humiliation Plaintiffs suffered.

14   Defendants did this repeatedly in print, on the radio, and on television, in local, regional, and

15   national media outlets.  Defendants did not make these comments about the Asian officers who

16   participated in the video.

17       29.    Plaintiffs are informed and believe and thereon allege that THE CITY and FONG

18   acted outside of required protocols and procedures by suspending and insulting Plaintiffs.  Rather

19   than conducting a formal investigation, filing charges, or convening a Chief's Hearing, on

20   December 8, 2005, and other dates, THE CITY and FONG groundlessly suspended, and publicly

21   insulted Plaintiffs.  This inappropriate response to the video violates the San Francisco Charter

22   and the San Francisco Police Department General Order, requiring a formal investigation, filing

23   of charges, and a hearing underway before the Police Commission for all allegations of

24   misconduct to properly suspend a Police Officer.

25       30.    Plaintiffs are informed and believe and thereon allege that THE CITY and FONG

26   did not use a valid, non-discriminatory criterion to determine Plaintiffs' discipline.  Plaintiffs

27   wrote to Defendants on July 13, 2006 and July 19, 2006 in an attempt to determine Defendants'

28   criterion for disciplining Plaintiffs.  Defendants refused to provide any criterion used in

Plaintiffs' discipline that justified the omission of Plaintiffs' Asian (Chinese-American) counterparts from any discipline. Defendants failed even to acknowledge Plaintiffs' reasonable requests.

31.     Plaintiffs are informed and believe and thereon allege that because of the acts of FONG and THE CITY, they have all suffered extreme humiliation and embarrassment. Being suspended from work, losing pay, and being publicly disgraced has taken a great toll on Plaintiffs, including loss of friendships, alienation from family members, and straining marriages, not to mention plaintiffs' personal feelings of fear, shame, and anger.

32.     Plaintiffs are informed and believe and thereon allege that after plaintiffs filed a Complaint in the instant action an alleged "investigation" occurred and was concluded the week of December 4, 2006.

33.     Plaintiffs are informed and believe and thereon allege that plaintiffs COHEN, HURLEY, LEWIS, PARRY and HARMSTON received letters requiring a hearing before the Police Commission.

34.     Plaintiffs are informed and believe and thereon allege that in retaliation for participating in the instant action COHEN must appear before the Police Commissioner as the creator of the video and on grounds of sexual and racial harassment and has been reassigned.

35.     Plaintiffs are informed and believe and thereon allege that in retaliation for participating in the instant action HURLEY is required to appear before the Police Commissioner for, including but not limited to, an alleged act of racism by handing a watermelon slice to James Lewis, an African-American officer in the parody video. Plaintiffs further contend that Officer Hurley is being retaliated against as Officer Cohen's fiancée.

36.     Plaintiffs are informed and believe and thereon allege that in retaliation for participating in the instant action LEWIS is required to appear before the Police Commissioner for, including but not limited to, leaving his assigned district, not devoting his whole time to the mission of the police department to protect life and property, conduct reflecting disrespect upon the police force, use of profane language, and gender and sexual harassment based upon his participation in the parody video.

FIRST AMENDED COMPLAINT

1    37.    Plaintiffs are informed and believe and thereon allege that in retaliation for

2  participating in the instant action PARRY is required to appear before the Police Commissioner

3  for, including but not limited to, leaving his assigned district, not devoting his whole time to the

4  mission of the police department to protect life and property, conduct reflecting disrespect upon

5  the police force, and racial harassment in the mocking of Asians in the parody video.

6    38.    Plaintiffs are informed and believe and thereon allege that in retaliation for

7  participating in the instant action HARMSTON is required to appear before the Police

8  Commissioner for, including but not limited to, leaving his assigned district, not devoting his

9  whole time to the mission of the police department to protect life and property, conduct

10  reflecting disrespect upon the police force, and racial harassment in the mocking of Asians in the

11  parody video.

12    39.    Plaintiffs are informed and believe and thereon allege that the video was only

13  approximately twenty-eight minutes in length.

14    40.    Plaintiffs are informed and believe and thereon allege that based upon the alleged

15  "investigation" concluding the week of December 4, 2006, other officers participating in this

16  action were retaliated against based upon their participation in the parody video. EVANSON

17  received a ten-day suspension for profane language and conduct.  GEORGE received a letter of

18  reprimand for using her tongue in a sexually explicit manner.

19    41.    Plaintiffs are informed and believe and thereon allege that based upon the alleged

20  "investigation" concluding the week of December 4, 2006, ARNDT, STUMAN, KIRCHNER,

21  and NASIR received a five-day suspension based upon pulling their guns in the parody video.

22    42.    Plaintiffs are informed and believe and thereon allege that based upon the alleged

23  "investigation" concluding the week of December 4, 2006, DEJESUS received a five-day

24  suspension based upon pulling their toy gun in the parody video.

25    43.    Plaintiffs are informed and believe and thereon allege that Lt. Curtis Lum, an

26  Asian received a five-day suspension with two days served and three days held in obeyance.  He

27  was further transferred from the Bayview station as he was the immediate supervisors of the

28  officers involved in the making of the parody video and was at one time the acting captain.  No

1  action was taken against Pai until after Plaintiff filed a Complaint in the instant action alleging

2  racial discrimination.

3       44.    Plaintiffs are informed and believe and thereon allege that John Pai, an Asian,

4  also received a reprimand. Pai received a letter of reprimand for having his police baseball cap

5  twisted to the side and allegedly flashing gang signs. No action was taken against Pai until after

6  Plaintiff filed a complaint in the instant action alleging racial discrimination.

7       45.    Plaintiffs are informed and believe and thereon allege that Alex Kwan, Derrick

8  Liu, and Eric Chiang, all Asian police officers, participated in the parody video. None of these

9  police officers were reprimanded before or after the allegedly "investigation" occurring the week

10  of December 4, 2006.

11      46.    Plaintiffs are informed and believe and thereon allege that Officer Berge, a

12  Caucasian police officer, was suspended for the identical activity of Liu in the video.

### FIRST CAUSE OF ACTION AGAINST DEFENDANT THE CITY

### RACE DISCRIMINATION

### Cal. Govt. Code § 12940

### [AS TO ALL PLAINTIFFS]

17      47.    Plaintiffs incorporate by reference the factual allegations of paragraphs 1 through

18  46 above.

19      48.    Defendants, through their agents and employees, engaged in a pattern and practice

20  of unlawful racial discrimination in violation of the Fair Employment and Housing Act

21  (hereinafter referred to as "FEHA") in connection with its treatment of Plaintiffs and the terms

22  and conditions of their employment.   Defendants used race as a basis to determine discipline

23  regarding the video. Specifically, Defendants disciplined only the non-Asian officers, and those

24  perceived to be non-Asian, who were involved in the video.

25      49.    At all relevant times, defendants had actual and constructive knowledge of the

26  discriminatory conduct described and alleged herein, and condoned, ratified and participated in

27  the discrimination. Because of the hostile and offensive work environment perpetrated and

28

1   maintained by defendants, and their failure to protect Plaintiffs from further discrimination,

2   Plaintiffs suffered severe emotional distress.

3       50.    Plaintiffs are informed and believe and thereon allege that in addition to the

4   practices enumerated above, defendants, and each of them, have engaged in other discriminatory

5   practices against Plaintiffs, which are not yet fully known.  When said discriminatory practices

6   become known to Plaintiffs, they will seek leave of court to amend this complaint in those

7   regards.

8       51.    As a direct and proximate result of the willful, knowing, and intentional

9   discrimination against Plaintiffs, and the failure to act by defendants, Plaintiffs have suffered

10  mental distress, anguish, and indignation.  Plaintiffs are thereby entitled to general and

11  compensatory damages in an amount to be proven at trial.

12      52.    Defendants' acts alleged herein are malicious, oppressive, despicable, and in

13  conscious disregard of Plaintiffs' rights.  As such, punitive damages are warranted against

14  defendants in order to punish and make an example of their actions.

15  ## SECOND CAUSE OF ACTION AGAINST DEFENDANT THE CITY

16  ## RACE DISCRIMINATION

17  ### 42 U.S.C. 2000(e) et. seq. (Title VII of the Civil Rights Act of 1964)

18  ### [AS TO ALL PLAINTIFFS]

19      53.    Plaintiffs incorporate by reference the factual allegations of paragraphs 1 through

20  52 above.

21      54.    Defendants, through their agents and employees, engaged in a pattern and practice

22  of unlawful racial discrimination in violation of 42 U.S.C. 2000(e) et. seq. (Title VII of the Civil

23  Rights Act of 1964) in connection with its treatment of Plaintiffs and the terms and conditions of

24  their employment.   Defendants used race as a basis to determine discipline regarding the video.

25  Specifically, Defendants disciplined only the non-Asian officers, and those perceived to be non-

26  Asian, who were involved in the video.

27      55.    At all relevant times, defendants had actual and constructive knowledge of the

28  discriminatory conduct described and alleged herein, and condoned, ratified and participated in

1    the discrimination. Because of the hostile and offensive work environment perpetrated and

2    maintained by defendants, and their failure to protect Plaintiffs from further discrimination,

3    Plaintiffs suffered severe emotional distress.

4        56.    Plaintiffs are informed and believe and thereon allege that in addition to the

5    practices enumerated above, defendants, and each of them, have engaged in other discriminatory

6    practices against Plaintiffs, which are not yet fully known. When said discriminatory practices

7    become known to Plaintiffs, they will seek leave of court to amend this complaint in those

8    regards.

9        57.    As a direct and proximate result of the willful, knowing, and intentional

10   discrimination against Plaintiffs, and the failure to act by defendants, Plaintiffs have suffered

11   mental distress, anguish, and indignation. Plaintiffs are thereby entitled to general and

12   compensatory damages in an amount to be proven at trial.

13       58.    Defendants' acts alleged herein are malicious, oppressive, despicable, and in

14   conscious disregard of Plaintiffs' rights. As such, punitive damages are warranted against

15   defendants in order to punish and make an example of their actions.

16                        **THIRD CAUSE OF ACTION AGAINST**

17                    **DEFENDANTS CITY, FONG, AND DOES 1-50**

18                                    **RETALIATION**

19                              **Cal. Govt. Code §12940**

20          **[AS TO PLAINTIFFS COHEN, HURLEY, LEWIS, EVANSON, PARRY, and**

21                                    **HARMSTON]**

22       59.    Plaintiffs incorporate by reference the factual allegations of paragraphs 1 through

23   58 above.

24       60.    Plaintiffs are informed and believe and thereon allege that defendants THE CITY

25   and FONG engaged in retaliatory conduct in violation of public policy against Plaintiffs for

26   opposing unlawful practices under FEHA.

27

28

61.     Plaintiffs are informed and believe and thereon allege that THE CITY through its agent and employee FONG retaliated against Plaintiffs in violation of California Government Code § 12940.

62.     Defendants did so by materially changing the employment conditions of Plaintiffs EVANSON, PARRY, and HARMSTON after they filed Notices of Tort Claims for their race discrimination claims related to their suspensions.

63.     Plaintiffs are informed and believe and thereon allege that on May 31, 2006, Plaintiffs filed Notices of Tort Claims against defendants THE CITY and FONG.  On June 20, 2006, Plaintiffs EVANSON, PARRY, and HARMSTON were transferred from their previous positions to the O.P.S. Center, and were given different, odd-hour, schedules, in violation of their contracts.  Plaintiffs' new positions were regarded as highly undesirable, and their new hours restricted Plaintiffs' ability to provide childcare.

64.     Plaintiff is informed and believes and thereon alleges that after an alleged "investigation" defendants took further retaliatory action against COHEN, HURLEY, LEWIS, PARRY and HARMSTON by sending a letter of reprimand requiring that they appear before the Police Commissioner to answer various charges as set forth above.

65.     Plaintiff is informed and believes and thereon alleges that in addition to the enumerated adverse actions above, defendants, and each of them, have engaged in other unlawful practices against COHEN, HURLEY, LEWIS, PARRY and  HARMSTON which are not yet fully known.  When said practices become known to Plaintiffs, they will seek leave to amend this complaint in those regards.

66.     As a direct and proximate result of defendants' willful, knowing, and intentional acts, and defendants' failure to act, COHEN, HURLEY, LEWIS, PARRY and HARMSTON have suffered and will continue to suffer mental distress, anguish, and indignation.  COHEN, HURLEY, LEWIS, PARRY and HARMSTON are thereby entitled to general and compensatory damages in an amount to be proven at trial.

67.     Defendants' acts alleged herein are malicious, oppressive, despicable, and in conscious disregard of COHEN, HURLEY, LEWIS, PARRY and HARMSTON's rights.  As

1  such, punitive damages are warranted against defendants in order to punish and make an

2  example of them.

4  ## FOURTH CAUSE OF ACTION AGAINST

5  ## DEFENDANTS CITY, FONG, AND DOES 1-50

6  ## RETALIATION

7  ### 42 U.S.C. 2000(e) et. seq. (Title VII of the Civil Rights Act of 1964)

8  ### [AS TO PLAINTIFFS EVANSON, PARRY, HARMSTON,

9  ### COHEN, HURLEY AND LEWIS]

10  68.    Plaintiffs incorporate by reference the factual allegations of paragraphs 1 through

11  67 above.

12  69.    Plaintiffs are informed and believe and thereon allege that defendants THE CITY

13  and FONG engaged in retaliatory conduct in violation of public policy against Plaintiffs for

14  opposing unlawful practices under FEHA.

15  70.    Plaintiffs are informed and believe and thereon allege that THE CITY through its

16  agent and employee FONG retaliated against Plaintiffs in violation of 42 U.S.C. 2000(e) et. seq.

17  (Title VII of the Civil Rights Act of 1964).

18  71.    Defendants did so by materially changing the employment conditions of

19  Plaintiffs EVANSON, PARRY, and HARMSTON after they filed Notices of Tort Claims for

20  their race discrimination claims related to their suspensions.

21  72.    Plaintiffs are informed and believe and thereon allege that on May 31, 2006,

22  Plaintiffs filed Notices of Tort Claims against defendants THE CITY and FONG.  On June 20,

23  2006, Plaintiffs EVANSON, PARRY, and HARMSTON were transferred from their previous

24  positions to the O.P.S. Center, and were given different, odd-hour, schedules, in violation of their

25  contracts.  Plaintiffs' new positions were regarded as highly undesirable, and their new hours

26  restricted Plaintiffs' ability to provide childcare.

27  73.    Plaintiff is informed and believes and thereon alleges that after an alleged

28  "investigation" defendants took further retaliatory action against COHEN, HURLEY, LEWIS,

1  PARRY and HARMSTON by sending a letter of reprimand requiring that they appear before the

2  Police Commissioner to answer various charges as set forth above.

3      74.    Plaintiff is informed and believes and thereon alleges that in addition to the

4  enumerated adverse actions above, defendants, and each of them, have engaged in other unlawful

5  practices against COHEN, HURLEY, LEWIS, PARRY and HARMSTON which are not yet

6  fully known.  When said practices become known to Plaintiffs, they will seek leave to amend this

7  complaint in those regards.

8      75.    As a direct and proximate result of defendants' willful, knowing, and intentional

9  acts, and defendants' failure to act, COHEN, HURLEY, LEWIS, PARRY and HARMSTON

10  have suffered and will continue to suffer mental distress, anguish, and indignation.  COHEN,

11  HURLEY, LEWIS, PARRY and HARMSTON are thereby entitled to general and compensatory

12  damages in an amount to be proven at trial.

13      76.    Defendants' acts alleged herein are malicious, oppressive, despicable, and in

14  conscious disregard of COHEN, HURLEY, LEWIS, PARRY and HARMSTON's rights.  As

15  such, punitive damages are warranted against defendants in order to punish and make an

16  example of them.

## FIFTH CAUSE OF ACATION AGAINST

## DEFENDANTS CITY, FONG AND DOES 1-50

## DEFAMATION

## [AS TO ALL PLAINTIFFS]

21      77.    Plaintiffs incorporate by reference the factual allegations of paragraphs 1 through

22  76 above.

23      78.    Plaintiffs are informed and believe and thereon allege that THE CITY and FONG

24  repeatedly publicized, or caused to be publicized, to third persons false allegations concerning

25  Plaintiffs.  These false allegations include but are not limited to allegations that they are bigots.

26      79.    Plaintiffs are informed and believe and thereon allege that the defendants made

27  accusations directly concerning Plaintiffs and were so understood by all persons involved in the

28  publication.

FIRST AMENDED COMPLAINT

80. Plaintiffs are informed and believe and thereon allege that these accusations were defamatory per se because they accused Plaintiffs of being racist, sexist, and homophobic. The accusations stated above, by natural consequence, cause actual damage to Plaintiffs both personally and professionally.

81. Plaintiffs are informed and believe and thereon allege that these accusations were false because Plaintiffs are not racist, sexist, or homophobic.

82. Plaintiffs are informed and believe and thereon allege that furthermore, THE CITY and FONG made these accusations knowing that they were false.

83. Plaintiffs are informed and believe and thereon allege that as a proximate result of the above-described accusations, Plaintiffs have suffered loss of their reputation, shame, mortification, and hurt feelings, all to their general damage in an amount according to proof.

84. Plaintiffs are informed and believe and thereon allege that the above-described accusations were publicized by defendants because of the defendants' rash and irrational response to public pressure. Defendants made the accusations without any investigation, thereby justifying an award of punitive damages against defendants in an amount appropriate to punish defendants for their wrongful conduct and to deter others from engaging in such conduct.

## SIXTH CAUSE OF ACTION AGAINST

## DEFENDANTS CITY, FONG AND DOES 1- 50

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

## [AS TO ALL PLAINTIFFS]

85. Plaintiffs incorporate by reference the factual allegations of paragraphs 1 through 84 above.

86. Plaintiffs are informed and believe and thereon allege that THE CITY by and through its agents, employees and defendants FONG and DOES 1-50 acted without regard to the health and safety of Plaintiffs, and each of them treated Plaintiffs in the deplorable manner alleged herein.

87. Plaintiffs are informed and believe and thereon allege that Defendants spoke about the video on local and national news outlets. Making public statements regarding a private

1 | personnel matter constitutes extreme and outrageous conduct. Furthermore, acting in a
2 | discriminatory manner is extreme and outrageous conduct in a civil society.

3 | 88.    Plaintiffs are informed and believe and thereon allege that defendants, standing in
4 | a position of authority over Plaintiffs, deliberately acted without regard to Plaintiffs' health,
5 | safety, or well-being, causing them severe emotional and physical distress.

6 | 89.    Plaintiffs are informed and believe and thereon allege that as a proximate result of
7 | defendants' extreme and outrageous acts, Plaintiffs suffered severe emotional distress in the form
8 | of humiliation, embarrassment, mental-anguish, anxiety, stress and indignation. Defendants
9 | acted with the willful knowledge that Plaintiffs would suffer severe harm as a result.

10 | 90.    Plaintiffs are informed and believe and thereon allege that defendants' acts alleged
11 | herein are malicious, oppressive, despicable, and in conscious disregard of Plaintiffs' rights. As
12 | such, punitive damages are warranted against defendants in order to punish them and make an
13 | example of their actions.

## PRAYER FOR RELIEF

WHEREFORE, PLAINTIFFS pray for relief as follows:

1.    For general damages in excess of twenty (20) million dollars and in no event less
than the jurisdictional limit of this court;

2.    For special damages in amounts according to proof;

3.    For punitive damages in amounts according to proof;

4.    For attorneys' fees as provided by law;

5.    For a mandatory injunction requiring defendants to reinstate Plaintiffs to their
previous positions without record of the adverse employment actions taken by
defendants, pursuant to *Government Code* §12970(a);

6.    For interest as provided by law;

///

///

FIRST AMENDED COMPLAINT

1  ///

2  7.      For costs of suit incurred herein; and

3  8.      For such other and further relief as the Court deems fair and just.

4

5  Dated: February 1, 2007                    LAW OFFICES OF WAUKEEN Q. McCOY

6

7                                      By

8                                      WAUKEEN Q. McCOY
                                       Attorney for Plaintiffs

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# PROOF OF SERVICE

I declare:

My business address is 703 Market Street, Suite 1407, San Francisco, CA. I am over the age of 18 and am not a party to this action.

On February 1, 2007  I caused to be served:

**FIRST AMENDED COMPLAINT**

**On** the party(ies) listed below, addressed as follows:

LAWRENCE HECIMOVICH
ADELMISE WARNER
1390 MARKET ST 5TH FLOOR
SAN FRANCISCO, CA 94103

___X___        **By hand delivery**

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on February 1, 2007  at San Francisco, California.

LAW OFFICES OF WAUKEEN Q. McCOY

Mark D Roberts

2

# EXHIBIT B

Case 3:07-cv-01186-SI    Document 9    Filed 12/26/2007    Page 24 of 37

1

2

3

4

5               IN THE UNITED STATES DISTRICT COURT

6          FOR THE NORTHERN DISTRICT OF CALIFORNIA

7

8  CLAYTON HARMSTON, et al.,         No. C 07-01186 SI

9        Plaintiffs,       **ORDER REGARDING VARIOUS**
                         **DISCOVERY-RELATED MOTIONS**

10   v.

11  CITY AND COUNTY OF SAN FRANCISCO,
    HEATHER FONG, et al.,

12        Defendants.

13  _____/

14      On November 2, 2007, the Court heard oral argument on defendants' motion for a protective

15  order to prevent the deposition of San Francisco Mayor Gavin Newsom, defendants' motion for

16  sanctions for violation of a protective order, plaintiffs' motion to compel San Francisco Police Chief

17  Heather Fong to answer additional questions, plaintiffs' motion to increase the time for Chief Fong's

18  deposition, plaintiffs' motion for sanctions related to Chief Fong's deposition, and plaintiffs' motion

19  to extend the deadline for fact discovery.  Having considered the arguments of counsel and the papers

20  submitted, the Court hereby rules as follows.

21

22                    **BACKGROUND**

23      Plaintiffs in this case are eighteen police officers, employed by the San Francisco Police

24  Department, who sued the City and Police Chief Heather Fong after they were disciplined and

25  suspended for their involvement in the making of a video that was meant to parody the work of police

26  officers assigned to the Bayview-Hunter's Point District.  Plaintiffs, who are self-described "non-Asian

27  individuals," contend that they were disciplined differently, and more harshly, than "Asian police

28  officers" who were also involved in the making of the video.

*United States District Court*
*For the Northern District of California*

United States District Court
For the Northern District of California

1    In December 2005, shortly after it was made, the video came to the attention of Chief Fong and

2    San Francisco Mayor Gavin Newsom, who believed the video contained racist, sexist, and homophobic

3    scenes.  Newsom and Fong appeared before the press to condemn the video, and Fong temporarily

4    suspended some, but apparently not all, of the police officers involved in making the video.  The City

5    and Fong also launched an investigation into the video sometime after it was discovered by Fong. That

6    investigation concluded in December 2006, at which point certain plaintiffs were given additional

7    suspensions as well as other forms of reprimand.

8    This Court previously denied plaintiffs' motion for leave to file an amended complaint adding

9    Mayor Gavin Newsom as a defendant.[1]  The Court also granted defendants' motion for judgment on the

10   pleadings regarding, among other things, plaintiffs' defamation claim against Chief Fong for comments

11   made during the joint press conference with Mayor Newsom.  Currently before the Court are a number

12   of discovery disputes relating to the taking of Chief Fong's deposition and to the possible taking of the

13   deposition of San Francisco Mayor Newsom.

14

15   **1.    Defendants' motion for a protective order**

16   **A.    Legal standard**

17   Discovery under Federal Rules of Civil Procedure is "accorded a broad and liberal treatment."

18   *Hickman v. Taylor*, 329 U.S. 495, 507 (1947).  Parties may obtain discovery regarding any matter, not

19   privileged, which is relevant to the subject matter involved in the pending action.  Fed. R. Civ. P.

20   26(b)(1).  For good cause, the court may order discovery of any matter relevant to the subject matter

21   involved in the action.  *Id.*

22   Depositions are generally available without leave of the court. Fed. R. Civ. P. 30(a)(1).  Any

23   party may depose "any person, including a party."  *Id.*  The Ninth Circuit has held, however, that

24   "[h]eads of government agencies are not normally subject to deposition." *Kyle Eng'g Co. v. Kleppe*,

25   600 F.2d 226, 231 (9th Cir. 1979).  This rule applies to mayors. *See Trunk v. City of San Diego*, 2007

26

27   [1]Plaintiffs assert in their motion to compel that Mayor Gavin Newsom was a party to this action
     at the time they noticed his deposition, but that he "has been dismissed." Neither statement is true;
28   Mayor Newsom has never been a party to this action. Plaintiffs filed a motion to amend their complaint
     to add the mayor as a party, but that motion was denied in September 2007.

1  WL 1110715 (S.D. Cal. April 2, 2007); *Marisol A. v. Giuliani*, 1998 WL 132810 *3-4 (S.D.N.Y. March

2  23, 1998). "'An exception to this general rule exists concerning top officials who have direct personal

3  factual information pertaining to material issues . . . where the information to be gained . . . is not

4  available through any other source.'" *Green v. Baca*, 226 F.R.D. 624, 648 (C.D. Cal. 2005) (quoting

5  *Church of Scientology of Boston v. I.R.S.*, 138 F.R.D. 9, 12 (D. Mass. 1990)).

6      Under Rule 26(c), a party may file a motion for a protective order, and a court may issue an order

7  "that the disclosure or discovery not be had" or "that the discovery may be had only by a method of

8  discovery other than that selected by the party seeking discovery." Fed. R. Civ. P. 26(c). The Supreme

9  Court has interpreted Rule 26(c) as conferring "broad discretion on the trial court to decide when a

10  protective order is appropriate and what degree of protection is required." *Seattle Times Co. v.*

11  *Rhinehart*, 467 U.S. 20, 36 (1984).

12

13  **B.    Discussion**

14      Defendants have filed a motion for a protective order to prevent plaintiffs from deposing San

15  Francisco Mayor Gavin Newsom. Plaintiffs have not responded directly to the motion but instead have

16  filed their own motion to compel the deposition of Mayor Newsom. Defendants argue that Mayor

17  Newsom has no direct personal knowledge unique to him regarding the facts underlying this case

18  because he was not involved in suspensions or disciplinary actions at issue in this case. Defendants also

19  argue that the plaintiffs have not demonstrated that the information they seek from Mayor Newsom is

20  not available from other sources. Plaintiffs respond that Mayor Newsom has personal knowledge of key

21  aspects of the press conference he held with Chief Fong and that this information cannot be obtained

22  from any other source.

23      As stated above, there is an exception to the rule regarding the deposition of heads of

24  government agencies where an official has "direct personal factual information" that is related to

25  "material issues" and is unavailable "through any other source." *Green*, 226 F.R.D. at 648. In their

26  motion to compel, the only "direct personal factual information" plaintiffs attribute to Mayor Newsom

27  is knowledge of facts relating to the press conference. This is not enough.

28      The Court has already held as a matter of law that Chief Fong is immune from tort liability

3

United States District Court
For the Northern District of California

1    arising from the press conference, because the decision to speak to the press on a novel and potentially

2    volatile situation involving the police department qualifies as a discretionary, policymaking decision

3    under California Government Code § 820.2. *See* September 25, 2007 Order [Docket # 48] at 8-9. Thus

4    the press conference itself is not a "material" issue. As to the conduct of the investigation and the

5    discipline imposed, pretextual or otherwise, the San Francisco Charter imposes on Chief Fong, not

6    Mayor Newsom, the authority and responsibility to suspend and discipline police officers. *See* San

7    Francisco Charter §§ A8.343-344. Plaintiffs have not seriously attempted to make arguments to the

8    contrary, other than simply stating (without support) that Mayor Newsom has knowledge related to

9    Chief Fong's decision to discipline plaintiffs. Under these circumstances, the record does not support

10    a determination that Mayor Newsom is in unique possession of information related to the disciplinary

11    decisions at issue.

12    Even if Mayor Newsom were in possession of such information, plaintiffs have made no attempt

13    to explain why the information cannot be obtained in other ways or from other sources. Defendants

14    argue persuasively that any information Mayor Newsom might have related to the disciplinary decisions

15    of Chief Fong can be discovered through written interrogatories and requests for admission addressed

16    to the City. In fact, plaintiffs have already directed a request for admission to Mayor Newsom.

17    Although he is not a party to the case, the City has responded to this request for admission relating to

18    Mayor Newsom's knowledge of the underlying facts of the case. Furthermore, plaintiffs have not yet

19    attempted to discover this information through written interrogatories. Plaintiffs have not shown,

20    therefore, that this information is not available through any other source.

21    Because plaintiffs have not demonstrated that Mayor Newsom has personal knowledge of

22    material information that cannot be obtained from another source, the Court finds it proper to uphold

23    the "normal rule" against taking the depositions of heads of government agencies. *Kyle Eng'g Co. v.*

24    *Kleppe*, 600 F.2d at 231; *Green*, 226 F.R.D. at 648. Accordingly, the Court need not reach defendants'

25    assertion that the information plaintiffs seek is protected by the deliberative process privilege. On this

26    record, the Court GRANTS defendants' motion for a protective order to prevent the deposition of Mayor

27    Newsom and DENIES as moot plaintiffs' motion to compel said deposition.

28

4

**2.    Defendants' motion for sanctions for violation of the protective order**

    **A.    Legal standard**

    "A court has power to adjudge in civil contempt any person who willfully disobeys a specific and definite order requiring him to do or to refrain from doing an act." *Shuffler v. Heritage Bank*, 720 F.2d 1141, 1146 (9th Cir. 1983). The Federal Rules of Civil Procedure provide that "if a party fails to obey an order entered under Rule 26(f),[2] the court . . . may make such orders in regard to the failure as are just, [including] . . . [a]n order . . . dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party . . . [or] an order treating as a contempt of court the failure to obey any orders." Fed. R. Civ. P. 37(b)(2)(D). The Court may also "require the party failing to obey the order or the attorney advising that party or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust." *Id.* at 37(b)(2).

    A court may hold a party in civil contempt only if there is a valid court order that is clear in its commands. *See Balla v. Idaho State Bd. of Corr.*, 869 F.2d 461, 465 (9th Cir. 1989) (court order must be "specific and definite"). To succeed on a motion for civil contempt, the moving party must "show by clear and convincing evidence that [the nonmoving party] violated the [court order] beyond substantial compliance, and that the violation was not based on a good faith and reasonable interpretation of the [order]." *Wolfard Glassblowing Co. v. Vanbragt*, 118 F.3d 1320, 1322 (9th Cir. 1997). "The district court may impose a sanction for the contempt only if it finds that the party requesting the sanction has proven contempt by clear and convincing evidence." *Peterson v. Highland Music Inc.*, 140 F.3d 1313, 1323 (9th Cir. 1998).


    **B.    Discussion**

    Defendants move the Court to find plaintiff Andrew Cohen and plaintiffs' counsel Waukeen McCoy in civil contempt for their failure to abide by the stipulated protective order regarding discovery

---

    [2]Rule 26(f) addresses the development of a discovery plan and references "any other orders that should be entered by the court under Rule 26(c)," the rule addressing protective orders. Fed. R. Civ. P. 26(f)(6).

**United States District Court**
**For the Northern District of California**

1  matter deemed confidential. In the event the Court finds plaintiffs to be in civil contempt, defendants

2  also ask the Court to impose sanctions by dismissing Cohen's claims, disqualifying McCoy from

3  representing plaintiffs in this matter, and ordering both Cohen and McCoy to pay fees and costs incurred

4  by defendants in bringing this motion. Plaintiffs argue in response that they should not be held in civil

5  contempt because they did not violate the protective order.

6        The dispute arises primarily out of the videotaped deposition of defendant Chief Fong, taken on

7  September 20, 2007, after the parties had stipulated to a protective order. At the start of that deposition,

8  counsel for defendants stated on the record that "defendants are designating the entire transcript of Chief

9  Fong's deposition as a confidential document. Subject to, of course, your objection and the court's

10  ruling ultimately on that." Hecimovich Decl. at ex. Y, page 7. McCoy responded with an objection that

11  "this deposition transcript cannot be marked as confidential. It's not a document that you're producing,

12  it is witness' testimony and this witness' testimony is being made under oath. So that's our objection

13  to that." *Id.*

14        In determining whether the protective order was violated, the Court will read the order "in a

15  reasonable and common sense manner." *On Command Video v. Lodgenet Entm't Corp.*, 976 F. Supp.

16  917, 921 (N.D. Cal. 1997). The parties in this case entered into a stipulated protective order on August

17  20, 2007, one month prior to the September 20, 2007 deposition of Chief Fong at issue in this motion.

18  Stipulated Protective Order ("Protective Order") [Docket # 29]. The protective order signed by the

19  parties covers deposition testimony because it applies to "information (regardless of how generated,

20  stored, or maintained)," *id.* at § 2.3, and because it specifically explains the procedure "for testimony

21  given in deposition," *id.* at § 5.2(b). That is, a party seeking to protect deposition testimony must

22  "identify on the record, before the close of the deposition . . . all protected testimony, and further specify

23  any portions of the testimony that qualify as 'CONFIDENTIAL.'" *Id.* Alternatively, "[w]hen it is

24  impractical to identify separately each portion of testimony that is entitled to protection, and when it

25  appears that substantial portions of the testimony may qualify for protection," the party providing the

26  testimony "may invoke on the record (before the deposition or proceeding is concluded) a right to have

27  up to 20 days to identify the specific portions of the testimony as to which protection is sought and to

28  specify the protection being asserted – 'CONFIDENTIAL.'" *Id.*

The protective order states that a party "must take care to limit any such designation [of confidentiality] to specific material that qualifies under the appropriate standards" and that "[m]ass, indiscriminate, or routinized designations are prohibited." *Id.* at § 5.1. If a party improperly designates material as confidential, that party may be exposed to sanctions. *Id.* Notwithstanding this provision, the protective order is clear that "[u]ntil the court rules on [a challenge to a party's designation], all parties shall continue to afford the material in question the level of protection to which it is entitled under the Producing Party's designation." *Id.* at § 6.3. The protective order also lays out in precise terms the method by which a party may challenge a designation of confidentiality. First, the challenging party "must begin the process by conferring directly . . . in voice to voice dialogue . . . with counsel for the Designating Party." *Id.* at § 6.2. If the parties cannot come to an agreement, the challenging party "may proceed to the next stage of the challenge," *id.*, which involves the filing and serving of "a motion under Civil Local Rule 7 . . . that identifies the challenged material and sets forth in detail the basis for the challenge," *id.* at § 6.3. Protected material may be used "only for prosecuting, defending, or attempting to settle this litigation" and may be disclosed only to certain categories of persons. *Id.* at § 7.1; *see also id.* at § 7.2.

Defendants' primary contentions, which plaintiffs do not dispute in their declarations, are that (1) on or about September 19, 2007, plaintiff Cohen posted on his website an interview summary document designated as confidential by defendants; (2) on September 27, 2007, Cohen filed an internal complaint with the San Francisco Police Department that included "an edited version of the video of Chief Fong's deposition" as evidence supporting the allegations in the internal complaint, Hecimovich Decl. at ex. W; (3) sometime between the afternoon of September 20 and the morning of September 21, plaintiffs' counsel McCoy provided or showed a copy of the videotaped deposition to a reporter for ABC News; and (4) McCoy filed in the Court's public record confidential excerpts from Chief Fong's deposition transcript without attempting to file under seal. There is no dispute between the parties that the materials in question were actually disclosed to the news media, the Internet, the public record, or the police department. For example, the Bay Area affiliate of ABC News showed portions of Chief Fong's deposition during a broadcast on September 21, 2007, and continues to feature video clips of the deposition on its website. *See* ABC 7 News, "Chief Heather Fong Points the Finger at Newsom," *at*

United States District Court
For the Northern District of California

1   http://abclocal.go.com/kgo/story?section=i_team&id=5669657 (9/21/07); ABC 7 News Blog, "Lawyers

2   Gone Wild," *at* http://iteamblog. abc7news.com/2007/09/lawyers-gone-wi.html (9/21/07).

3          The Court agrees with defendants that both Cohen and McCoy violated the clear terms of the

4   protective order. At the start of Chief Fong's deposition, counsel for defendants stated on the record

5   that "defendants are designating the entire transcript of Chief Fong's deposition as a confidential

6   document. Subject to, of course, your objection and the court's ruling ultimately on that." Hecimovich

7   Decl. at ex. Y, page 7. This statement satisfies the requirement that the designating party identify on

8   the record the protected testimony or the right to have up to 20 days to designate specific portions of the

9   testimony as confidential. *See* Protective Order at § 5.2(b). Once designated as such, the parties were

10  required to "afford [Chief Fong's testimony] the level of protection to which it is entitled under the

11  Producing Party's designation," *id.* at § 6.3, i.e. confidential. This means that Chief Fong's testimony

12  was to be treated as confidential unless and until plaintiffs put forth an appropriate challenge to the

13  designation and the Court had an opportunity to rule on that challenge. *Id.* at §§ 6.1-6.3. The protective

14  order is clear that the proper procedure was for plaintiffs to first meet and confer with defendants and

15  then to file a motion under Civil Local Rule 7 challenging defendants' designation of the material as

16  confidential. *Id.* None of these procedures were followed in this case. Even if the Court were to

17  construe plaintiffs' September 26, 2007 letter as a properly filed motion in accordance with § 6.3 of the

18  protective order, the Court has not yet "rule[d] on the challenge," either to defendants' designation of

19  the whole of Chief Fong's testimony as confidential or to defendants' subsequent designation of certain

20  portions as confidential within the 20-day window. Accordingly, Chief Fong's testimony was and is

21  to be treated as confidential, until the Court rules that it is not. *See id.* at § 6.3.

22         Instead of following the procedures laid out in the protective order, Cohen and McCoy evidently

23  decided that because they thought defendants' counsel did not have grounds to designate the whole of

24  Chief Fong's deposition testimony as confidential, they could ignore the order without bringing the

25  proper challenge to this Court. They now argue that defendants' counsel either improperly designated

26  the entire deposition testimony as protected, or did not properly invoke the right to have 20 days to

27  designate portions of the testimony as confidential. This argument is beside the point. Even assuming

28  defendants did not properly invoke the 20-day procedure for designating specific portions of the

United States District Court
For the Northern District of California

1    testimony as confidential, it is clear from their statements on the record that defendants were designating

2    "the entire transcript of Chief Fong's deposition as a confidential document." *Id.* It may be that the

3    designation was improper and would subject defendants to the possibility of sanctions under § 5.1 of

4    the protective order, but under the terms of the protective order that designation, even if later determined

5    to be improper, remains in place until the Court orders otherwise after a properly-presented challenge.

6    *See* Protective Order at § 6.3. For this reason, McCoy violated the protective order and the designation

7    of confidentiality when he provided Chief Fong's testimony to the news media and filed it as part of the

8    public record, and Cohen violated the order when he provided the testimony to an officer of the police

9    department and posted on his website a separate document designated as confidential. *See id.* at §§ 7.2,

10   10.[3] At the time of these disclosures, the Court had in no way overruled defendants' designations.

11           The Court finds that the evidence demonstrating that Cohen and McCoy violated the protective

12   order is clear and convincing; indeed, the evidence of the conduct charged is unchallenged. The Court

13   therefore finds Cohen and McCoy in civil contempt, pursuant to Federal Rule of Civil Procedure

14   37(b)(2)(D). The protective order agreed to by the parties and signed by the Court was valid and clear

15   in its commands, *see Balla*, 869 F.2d at 465, specifically stating that "[u]ntil the court rules on the

16   challenge, all parties shall continue to afford the material in question the level of protection to which

17   it is entitled under the Producing Party's designation," Protective Order at § 6.3. Cohen and McCoy

18   were not in substantial compliance with the protective order because they distributed material designated

19   as confidential about as widely as possible, to both the Internet and a television news station. They also

20   cannot rely on a good faith and reasonable interpretation of the protective order. *Wolfard Glassblowing*

21   *Co.*, 118 F.3d at 1322. McCoy's initial reason for disobeying the protective order – as he stated during

22   the deposition itself – was that depositions are not covered. Hecimovich Decl. at ex. Y, page 7. As

23   discussed above, this interpretation is in no way supported by the plain language of the protective order.

24

25           [3]McCoy also objects that defendants' designations of confidentiality are overbroad and infringe
     plaintiffs' First Amendment rights. It is important to note that the Court is not at this time deciding
26   whether defendants' designations qualify as material that should be protected. The Court can make that
     decision only after plaintiffs have met and conferred with defendants regarding the challenged material,
27   *see* Protective Order at § 6.2, and have filed the proper motions in accordance with § 6.3. The protective
     order is clear that material designated as confidential is to be treated as such until the Court rules
28   otherwise, regardless whether the parties were justified in their designations.

*See* Protective Order at §§ 2.3, 5.2(b). The second reason put forth by plaintiffs for not obeying the protective order is that defendants' designation of confidentiality was too broad. This interpretation finds no support in the plain language of the order, given that a confidential designation remains in place until the Court rules otherwise. *Id.* at § 6.3.[4]

The Court also agrees with defendants that sanctions for this contempt are appropriate to compensate defendants for plaintiffs' noncompliance. *See Shuffler*, 720 F.2d at 1147; Fed. R. Civ. P. 37(b)(2). Because the affidavits are uncontroverted and the parties agree as to what transpired (though not as to their interpretations of the protective order), the Court need not hold an evidentiary hearing prior to ordering sanctions. *Highland Music, Inc.*, 140 F.3d at 1324. Defendants have proven contempt by clear and convincing evidence, and the parties do not dispute that the materials in question were disseminated. *Id.* at 1323. The Court therefore orders Cohen and McCoy to pay defendants' reasonable expenses, including attorney's fees, which totals $24,407.42 based on the declarations of defendants' counsel.[5] Payment of $24,407.42 shall be made by November 30, 2007.

Defendants also ask that the Court sanction McCoy by forbidding him from representing the plaintiffs in this matter and sanction Cohen by dismissing his claims against defendants. The Court declines to order these other, far more drastic sanctions, as the Court believes that monetary sanctions are adequate and prefers to dispose of this case on its merits. *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1260-61 (9th Cir. 1992); *N. Am. Watch Corp. v. Princess Ermine Jewels*, 786 F.2d 1447, 1451 (9th Cir. 1986).

---

[4] It should be noted that defendants' counsel stated this precise rule when he designated the testimony as confidential, saying that his designation was "[s]ubject to . . . your objection and the court's ruling ultimately on that." Hecimovich Decl. at ex. Y, page 7. Thus, even if McCoy had forgotten the rules laid out in the protective order he had signed just one month earlier, he was reminded of this rule during the deposition itself on September 20, 2007, one day before providing the deposition to ABC News.

[5] The declarations supporting defendants' reasonable expenses are unchallenged. In addition, the Court finds that the hours and hourly rates identified in the declarations are reasonable under the circumstances.

United States District Court
For the Northern District of California

**3.    Plaintiffs' motion to compel further deposition testimony, and related motions**

**A.    Legal standard**

Discovery under the Federal Rules of Civil Procedure is "accorded a broad and liberal treatment." *Hickman v. Taylor*, 329 U.S. 495, 507 (1947). Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action. Fed. R. Civ. P. 26(b)(1). For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. *Id.*

Depositions are generally available without leave of the court. Fed. R. Civ. P. 30(a)(1). Any party may depose "any person, including a party." *Id.* A motion to compel is appropriate when "a deponent fails to answer a question propounded or submitted under [Federal Rule of Civil Procedure] 30." Fed. R. Civ. P. 37(a)(2)(B). The movant must certify that it has in good faith conferred or attempted to confer with the party failing to make discovery in an effort to secure information or material without court action. *Id.*; *see* Civil L.R. 37-1.

If a motion to compel is granted, the court shall require the party whose conduct necessitated the motion to pay the moving party the reasonable expenses incurred in making the motion, including reasonable attorney's fees, unless it finds the opposition was "substantially justified" or other circumstances make such award "unjust." Fed. R. Civ. P. 37(a)(4)(A). In addition, "[i]f the court finds that any impediment, delay, or other conduct has frustrated the fair examination of the deponent, it may impose upon the persons responsible an appropriate sanction, including the reasonable costs and attorney's fees incurred by any parties as a result thereof." Fed. R. Civ. P. 30(d)(3).

**B.    Discussion**

Plaintiffs have filed motions to compel further deposition testimony of defendant Chief Fong, to increase the deposition time of Chief Fong, to sanction defendants' counsel for their conduct during the deposition of Chief Fong, and to extend the discovery period by two months. Defendants object that all of these motions should be denied on the grounds that plaintiffs failed to comply with Civil Local Rule 7-2(A), which requires motions to be filed at least 35 days prior to the day the motioned is calendared. Plaintiffs filed their motions on October 12, 2007, but noticed the motions for November

11

1    2, 2007, a window of only 21 days.  Under normal circumstances, plaintiffs' motion would have been

2    improperly filed.  Here, however, the Court noted during the case management conference on September

3    27, 2007, that defendants could bring their motion for sanctions on an expedited schedule to be heard

4    November 2, 2007; the Court also stated that plaintiffs could bring their motion for sanctions at that time

5    as well.  Because it was the Court's intention to address all of the various discovery-related issues raised

6    by both parties on November 2, the Court will reach the merits of plaintiffs' motions and not overrule

7    them based on the alleged procedural deficiency.  The parties are reminded, however, that absent

8    stipulation or the approval of the Court, they must continue to follow the mandates of Local Civil Rule

9    7-2.

10       Plaintiffs move the Court to compel Chief Fong to answer certain questions that she was advised

11   not to answer during the first deposition session on September 20, 2007.  Plaintiffs argue that it was

12   improper for defendants' counsel to instruct Chief Fong not to answer questions regarding (1) whether

13   she had received or reviewed certain documents and (2) whether she believed she had violated local

14   statutes and regulations.  Defendants respond that Chief Fong did answer some of these questions and

15   that to the extent she did not it was due to a valid need to preserve the attorney-client privilege.

16       As to the first set of questions, the Court cannot determine whether there was a need to preserve

17   the attorney-client privilege with regard to plaintiffs' question of why Chief Fong did not review the

18   suspension letters.  *See* Fong Deposition at 25.  The parties have not provided the Court with any

19   indication of what those suspension letters were or why the question would or would not involve the

20   attorney-client privilege.  Plaintiffs also urge the Court to compel Chief Fong to answer a question about

21   whether she had reviewed defendants' responses to plaintiffs' form interrogatories.  *Id.* at 32.  The Court

22   DENIES plaintiffs' motion with respect to this question because Chief Fong did answer when she stated

23   that she did not personally respond to the interrogatories.  *Id.* at 33:14-16.

24       The second set of questions involve Chief Fong's knowledge of whether she violated local

25   statutes and regulations.  Chief Fong answered plaintiffs' question as to whether she was required to

26   follow the San Francisco Charter.  *See id.* at 81.  Chief Fong also made clear that she could not answer

27   each of the remaining two questions at issue here because doing so would require the disclosure of

28   attorney-client communications about the legality of her actions.  That is, plaintiffs asked Chief Fong

1   whether she thought she had violated various local rules, and Chief Fong stated each time that her

2   understanding of the rules and whether she violated them was based on confidential communications

3   with her attorney. *See id.* at 116, 118. The Court agrees that these answers, if based on Chief Fong's

4   discussions with counsel, would disclose privileged communications and that Chief Fong therefore is

5   not required to answer. For these reasons, the Court DENIES plaintiffs' motion to compel.

6         Plaintiffs also ask the Court to increase the length of Chief Fong's deposition from the standard

7   seven hours, but do not provide any indication of how much time they actually request. The Court finds

8   that plaintiffs' request is premature at this juncture because plaintiffs have deposed Chief Fong for only

9   three hours. Plaintiffs are advised to depose Chief Fong for the four hours that remain. If, after taking

10   a full seven hours of deposition, plaintiffs believe that two or three additional hours are needed,

11   plaintiffs may move for an enlargement at that time. Plaintiffs should be aware, however, that the Court

12   has no intention of granting plaintiffs leave to depose Chief Fong for four days, as initially suggested

13   by plaintiffs' counsel in a letter to defendants. Plaintiffs are also advised that should they feel the need

14   to request additional time, they must attempt in good faith to meet and confer with defendants and, if

15   no resolution can be reached by the parties, must request a specific amount of time and must describe

16   why the enlargement is necessary. *See* Civil Local Rule 16-2(d).

17         Finally, plaintiffs ask the Court to order defendants to pay sanctions for their counsel's behavior

18   during the deposition of Chief Fong, while defendants move for sanctions against plaintiffs for their

19   counsel's refusal to meet and confer regarding the scheduling of plaintiffs' motions. The Court is aware

20   that the pretrial discovery period has not reflected the finest professional hour of either counsel. Chief

21   Fong's deposition, for example, found counsel reacting, and over-reacting, to one another in ways which

22   effectively stymied completion of the deposition, and similar conduct has occurred in other depositions.[6]

23   Because both parties participated in achieving this result, the Court does not believe that assessing

24   monetary sanctions against either would be appropriate at this time. However, based on the

25   uncontroverted record before it, the Court finds that these are "exceptional conditions" which require

26

27        [6]This Court has already been contacted on several occasions during depositions to referee

28   disputes. Both counsel have asserted that because the lawyers are talking over one another, the deposition transcripts will not accurately reflect the proceedings.

1  the appointment of a special discovery master to oversee discovery and insure that the parties behave

2  properly during depositions and other interactions. Fed. R. Civ. P. 53(a)(1)(B)(i); Civ. Local Rule 11-

3  6(a)(2); *Nat'l Ass'n of Radiation Survivors v. Turnage*, 115 F.R.D. 543, 560-61 (N.D. Cal. 1987); *Good*

4  *Stewardship Christian Ctr. v. Empire Bank*, 341 F.3d 794, 797-98 (8th Cir. 2003).

5      Accordingly, the parties are hereby notified pursuant to Federal Rule of Civil Procedure 53(b)(1)

6  that the Court intends to appoint a special master on or after November 16, 2007, and intends to order

7  that the cost of the special master initially be borne equally by the parties, subject to re-allocation for

8  good cause shown. **The parties may file any responses to this notice, including suggestions of**

9  **candidates for appointment, in writing no later than November 15, 2007.** The Court intends to rule

10  on plaintiffs' motion to extend discovery after consulting with the discovery master, who will inform

11  the Court whether additional time for discovery is necessary.

12

13                          **CONCLUSION**

14      For the foregoing reasons and for good cause shown, the Court hereby GRANTS defendants'

15  motion for a protective order relating to the deposition of Mayor Newsom [Docket # 50] and DENIES

16  as moot plaintiffs' motion to compel the deposition [Docket # 72]. The Court GRANTS defendants'

17  motion to find Cohen and McCoy in civil contempt for violating the stipulated protective order and

18  orders them to pay defendants' reasonable expenses [Docket # 66]. The Court DENIES plaintiffs'

19  motion to compel Chief Fong to answer additional questions and for sanctions, and DENIES without

20  prejudice plaintiffs' motion to increase the length of time for Chief Fong's deposition [Docket # 71].

21  The Court NOTIFIES THE PARTIES that it intends to appoint a special master to oversee discovery,

22  pursuant to Federal Rule of Civil Procedure 53 and Local Rule 11-6, and that it will accept responses

23  to this notice, including suggestions of candidates for appointment, on or before November 15, 2007.

24      **IT IS SO ORDERED.**

25

26  Dated: November 6, 2007

27                                              SUSAN ILLSTON
                                                United States District Judge
28

United States District Court
For the Northern District of California

14