WAUKEEN Q. McCOY, ESQ. (SBN: 168228)
LAW OFFICES OF WAUKEEN Q. McCOY
703 Market Street, Suite 1407
San Francisco, California 94103
Telephone (415) 675-7705
Facsimile (415) 675-2530

Attorney for Plaintiffs
ANDREW COHEN AND JAMES LEWIS.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDREW COHEN, an individual; JAMES LEWIS, an individual<br><br><br>Plaintiffs,<br><br>vs.<br><br><br>CITY AND COUNTY OF SAN FRANCISCO, HEATHER FONG, an individual, and DOES 1-50<br><br>Defendants. | Case No. C07-06208 EMC<br><br>**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**<br><br>**Date: JANUARY 30, 2008**<br>**Time: 10:30 A.M.**<br>**Judge: Hon. Edward M. Chen** |

1    Plaintiffs, through their counsel of record herein. hereby oppose Defendants' Motion to

2  Dismiss pursuant to FRCP Rule 12(b)(6).  The motion is without foundation in law or fact.  The

3  allegations of the complaint herein allege injuries separate and distinct from those alleged in the

4  *Harmston* matter.    Plaintiffs are not opposing the pending motion by Defendants to consolidate

5  this matter with the *Harmston* litigation.  Plaintiffs attach to this Memorandum as Attachment

6  "A" a copy of Judge Illston's Order in the *Harmston* matter concerning the same arguments raised

7  by Defendants here concerning immunity.   Plaintiffs request that the Motion to Dismiss be

8  denied in its entirety and that this matter be consolidated with the *Harmston* matter.

9

10                **I.  INTRODUCTION**

11    This is an action for damages for  Retaliation and Intentional Infliction of Emotional

12  Distress.  This action arises out of events involving Plaintiffs Andrew Cohen and James Lewis

13  (hereinafter "Plaintiffs") and Defendant City and County of San Francisco (hereafter "Defendant"

14  or "CCSF").  Plaintiffs were employed as Peace Officers by the City and County of San

15  Francisco in San Francisco.

16    Plaintiffs herein are  members of a group of Plaintiffs who filed an action against

17  Defendants CCSF and Fong for, *inter alia,* racial discrimination and various civil rights

18  violations stemming from their participation in the creation of certain video vignettes, entitled

19  *Harmston, et. al. v. CCSF, et. al.,* United States District Court for the Northern District of

20  California, Case No. 3:07-cv-01186-SI (the *"Harmston"* case).

21    As a direct result of Plaintiffs' active participation as Plaintiffs in the *Harmston*

22  litigation, including their participation in the deposition of Chief Heather Fong on or about

23  September 20, 2007, beginning in or about September 29, 2007, Plaintiffs were retaliated against

24  and were subjected to an extreme degree of scrutiny including but not limited to being monitored

25  by other officers in the performance of their duties.

26

27    Plaintiffs have suffered further adverse employment actions for participating in the

   *Harmston* litigation.  The requirement imposed by Defendants of constant and intrusive

28

1    supervision and monitoring at all times has caused Plaintiffs' shifts to be changed in order to

2    accommodate the needs of the officers serving as monitors of Plaintiffs' work.

3           Plaintiffs have filed additional EEOC charges based upon this retaliation against

4    Cohen and Lewis for their participation in the *Harmston* litigation.  The conduct complained of

5    occurred beginning September 29, 2007, more than a year after the filing of the *Harmston*

6    complaint.

## II.  FACTUAL BACKGROUND

8           CCSF and Fong allege inconsistent theories in their moving papers.  On the one hand,

9    they assert that these Plaintiffs should have brought these causes of action in the *Harmston*

10   matter, and because they did not, they are barred from bringing them here (Memorandum, p. 5,

11   Docket No. 8 ).  Immediately thereafter, *without alleging in the alternative,* CCSF and Fong

12   allege that these claims have already been brought in the *Harmston* matter, and are therefore

13   barred.  (Memorandum, p. 6, Docket No. 8).  CCSF and Fong's characterization of the facts

14   suffers the same deficiencies as their failure in logic.

15

16   **A.  The *Harmston* Allegations of Protected Activity and Adverse Employment Actions.**

17          The Court should look carefully at the First Amended Complaint in *Harmston* to

18   determine whether the injuries alleged in this matter are the same injuries alleged in *Harmston*.

19   Of particular consequence are the Third and Fourth causes of action in the First Amended

20   Complaint.  The Third Cause of Action is for Retaliation under the California Fair Employment

21   and Housing Act ("FEHA" Cal. Govt. Code §12940) and the Fourth Cause of Action is for

22   Retaliation under Title VII (42 U.S.C. 2000(e) et. seq.).

23          As pleaded in *Harmston*, Cohen and Lewis engaged in a protected activity:  filing a

24   notice of tort claim, along with other officers, against the City and Fong on May 31, 2006:

25

26   63.  Plaintiffs are informed and believe and thereon allege that **on May 31, 2006,
     Plaintiffs filed Notices of Tort Claims against defendants THE CITY and FONG**.
     On June 20, 2006, Plaintiffs EVANSON, PARRY, and HARMSTON were transferred

27   from their previous positions to the O.P.S. Center, and were given different, odd-hour,
     schedules, in violation of their contracts.  Plaintiffs' new positions were regarded as

28

P&A IN OPPOSITION TO MOTION TO DISMISS

highly undesirable, and their new hours restricted Plaintiffs' ability to provide childcare.

(*Harmston* FAC ¶63, emphasis added).    In the May 31, 2006 notice of tort claim Plaintiffs opposed unlawful employment practices under the FEHA by Defendants:

> 60.  Plaintiffs are informed and believe and thereon allege that defendants THE CITY and FONG engaged in retaliatory conduct in violation of public policy against Plaintiffs **for opposing unlawful practices under FEHA.**

(*Harmston* FAC ¶60, emphasis added).  The adverse employment action taken in retaliation for that protected activity was a letter of reprimand, requiring Cohen and Lewis (amongst other officers) to appear before the Police Commission to answer various charges:

> 64.  Plaintiff is informed and believes and thereon alleges that after an alleged "investigation" defendants took further **retaliatory action against COHEN, HURLEY, LEWIS, PARRY and HARMSTON by sending a letter of reprimand requiring that they appear before the Police Commissioner to answer various charges as set forth above.**

(*Harmston* FAC ¶64, emphasis added).  The *Harmston* Plaintiffs also alleged that there were other retaliatory actions that had already occurred as of August, 2006, of which they were at that time unaware:

> 65.  Plaintiff is informed and believes and thereon alleges that in addition to the enumerated adverse actions above, **defendants, and each of them, have engaged in other unlawful practices** against COHEN, HURLEY, LEWIS, PARRY and HARMSTON which are not yet fully known.  When said practices become known to Plaintiffs, they will seek leave to amend this complaint in those regards.

(*Harmston* FAC ¶65, emphasis added).  Note the language "have engaged in other unlawful practices".  That language refers to acts occurring prior to the filing of the first amended complaint in Harmston on .

**B.        The *Cohen* Allegations for New Protected Activity and New Adverse Employment Actions.**

Contrasting the *Harmston* allegations set forth above are the allegations of the complaint in this action. First, the protected activity:

> 10. As a direct result of **Plaintiffs' active participation as Plaintiffs in the *Harmston* litigation, including their participation in the deposition of Chief Heather Fong on or about September 20, 2007**, beginning in or about September 29, 2007, Plaintiffs were retaliated against and were subjected to an extreme degree of scrutiny including but not limited to being monitored by other officers in the performance of their duties.

(*Cohen* Complaint, ¶ 10, emphasis added). This protected activity is the participation in the ongoing litigation; particularly Cohen and Lewis's participation in the Deposition of Police Chief Heather Fong, which occurred on September 20, 2007, **more than a year after the *Harmston* complaint was filed.** Whether or not this participation may be deemed a violation of some General Order or other regulation, the facts alleged are the participation in the deposition of Heather Fong and the active participation of Officers Cohen and Lewis in the ongoing litigation.

The adverse employment action taken by Defendants in this matter is detailed in the Complaint:

> 11. . . .Plaintiffs were subjected to an extreme degree of scrutiny by Defendants, who required that Plaintiffs be monitored by other officers at all times in the performance of their duties.
> 12. Plaintiffs have suffered further adverse employment actions for participating in the *Harmston* litigation. The requirement imposed by Defendants of constant and intrusive supervision and monitoring at all times has caused Plaintiffs' shifts to be changed in order to accommodate the needs of the officers serving as monitors of Plaintiffs' work.
> 13. The shift changes required by the monitoring officers' schedules has caused extreme hardship upon Plaintiffs.

(*Cohen* Complaint, ¶¶11-13, emphasis added). This action by Defendants is not based on the protected activity in *Harmston* and constitutes injuries that are separate and distinct from those in *Harmston.*

/ / /

/ / /

1

2                          **III.  LAW AND ARGUMENT**

3

4  **A.    PLAINTIFFS COULD NOT HAVE ASSERTED THEIR CLAIMS IN THE**
       ***HARMSTON* MATTER BECAUSE THESE CLAIMS AROSE MORE THAN A**
       **YEAR LATER.**

5

6

7      The gravamen of the present complaint is that Defendants retaliated against these Plaintiffs
   based upon actions that occurred since the filing of the *Harmston* action.

8

9

10         **1.  PLAINTIFFS' CLAIMS HEREIN ARE FOR INJURIES SEPARATE FROM**
             **THE INJURIES ALLEGED IN THE *HARMSTON* ACTION.**

11

12      The rule against duplicative actions under California law applies to subsequent actions

13  only if the claims are based on the same "primary right" and allege damages for the "same

14  injury."  Two proceedings are on the same cause of action if they are based on the same "primary

15  right." ( *Mycogen Corp. v. Monsanto Co.*, 28 Cal.4th 888,  904).  The plaintiff's primary right is

16  the right to be free from a particular injury, regardless of the legal theory on which liability for

17  the injury is based. ( Ibid.) The scope of the primary right therefore depends on how the injury is

18  defined. A cause of action comprises the plaintiff's primary right, the defendant's corresponding

19  primary duty, and the defendant's wrongful act in breach of that duty. ( Ibid.)

20      "An injury is defined in part by reference to the set of facts, or transaction, from which

21  the injury arose." *Federation of Hillside and Canyon Associations v. City of Los Angeles*, 126

22  Cal.App.4th 1180, 1203.

23      The intense scrutiny and unprecedented orders of supervision on the work of Officers

24  Cohen and Lewis did not occur prior to the filing of the *Harmston* complaint.  They occurred

25  beginning September 29, 2007, more than a year later.  This is not the same series of events, but

26  rather a whole new set of adverse employment actions based upon new facts, new occurrences,

27  and a wholly separate transaction.

28

1    The gravamen of the Complaint herein lies not in the disparate treatment of Cohen and

2   Lewis  after the videos were released, but rather in the retaliation  that occurred nearly two years

3   later, when during their active participation in the *Harmston*  lawsuit, including the deposition of

4   Chief Heather Fong, they were subjected to an unprecedented level of scrutiny, essentially not

5   being allowed to work without the supervision of another officer at all times.

6    The California Supreme Court in *Mycogen Corp. v. Monsanto Co.*, supra, 28 Cal.4th at

7   pages 906, 123 Cal.Rptr.2d 432, 51 P.3d 297 to 907, held that a breach of contract gives rise to a

8   single cause of action, all of the remedies for which must be sought in a single action, even if a

9   particular item of damage has not yet been sustained. The court held that the plaintiff's primary

10   right was the right to be free from all of the injuries arising from a particular breach of contract,

11   and distinguished cases where separate and distinct contract covenants were breached at different

12   times. ( *Id*. at pp. 907-908).

13    Here, the retaliation suffered by Plaintiffs occurred at separate and distinct times, and

14   was comprised of additional and separate punitive actions taken as a result of additional and

15   separate protected activities.  As set forth in the introduction, it is clear that the facts alleged in

16   this matter, though involving some of the same parties, does not arise from the same set of facts

17   as the *Harmston* matter, and could not, given the separation in time.

18

19   **B.        THE CHIEF'S ACTIONS ARE NOT PRIVILEGED**

20    Plaintiffs have asserted a cause of action for retaliation under FEHA based upon the

21   increased monitoring of work of Officers Cohen and Lewis, and the schedule changes that have

22   flowed naturally from their monitors' schedules.

23    Defendants argue that Fong is immune from liability under Government Code § 820.2

24   for any disciplinary actions because they are discretionary. At the pleading stage of the litigation,

25   the Court must  accept as true the allegations of the Complaint.  As such the Court cannot make

26   such a finding. The decision to have monitors assigned to watch over these Plaintiffs every

27   moment they are on the job is  an operational decision that does not implicate the policy-making

28   and planning functions of the police department. As stated by the California Court of Appeal,

P&A IN OPPOSITION TO MOTION TO DISMISS

1  "decisions regarding job assignments, training and promotion may not be characterized as a

2  quasi-legislative policy-making [decision which] is sufficiently sensitive to call for judicial

3  abstention ...."  *Taylor v. City of L.A. Dep't of Water and Power*, 144 Cal.App.4th 1216, 1239, 51

4  Cal.Rptr.3d 206 (Cal.Ct.App.2006)  (internal quotation marks omitted) (alteration in original)

5  The *Taylor* court characterized decisions similar to those made by Chief Fong here as "routine

6  duties incident to the normal operations of the employee's office or position".   In *Corales v.*

7  *Bennett*, 488 F.Supp.2d 975, 990 (C.D.Cal.2007) the court denied immunity under Government

8  Code § 820.2 to a principal engaged in school discipline.    The Chief of Police stands in a similar

9  position, and should be treated similarly.

10         The California Supreme Court decision in *Caldwell*, relied upon by the Defendants is

11  inapposite.    That case held that school board members were immune from liability stemming

12  from their termination of a school superintendent for discriminatory and retaliatory reasons.

13  *Caldwell*, 10 Cal.4th at 976-977, 989, 42 Cal.Rptr.2d 842, 897 P.2d 1320. There, however, the

14  court relied on the importance of a school superintendent, "the [school] district's foremost

15  appointed official" who occupies a "crucial post" which has "fundamental policy implications."

16  *Id*. at 983, 42 Cal.Rptr.2d 842, 897 P.2d 1320. The court also relied in part on "a state statute that

17  gave the school board authority over the superintendent's employment," indicating that the

18  decision was "expressly entrusted to a coordinate branch of government at its highest level."

19  *McQuirk v. Donnelley*, 189 F.3d 793, 800 (9th Cir.1999) (citing *Caldwell*, 10 Cal.4th at 982, 42

20  Cal.Rptr.2d 842, 897 P.2d 1320) (internal quotation marks omitted).   In contrast to the school

21  superintendent at issue in *Caldwell,* the plaintiff police officers here do not hold high-level

22  positions of authority.

23         Judge Illston's order in the *Harmston*  matter contains an exhaustive treatment of the

24  inapplicability of Caldwell to the question of whether Chief Fong's decisions here are immune:

25

26         Defendants also rely on cases -- *Lipman v. Brisbane Elementary School District*,
       55 Cal.2d 224, 11 Cal.Rptr. 97, 359 P.2d 465 (1961), and *Hopper v. Allen*, 266

27       Cal.App.2d 797, 72 Cal.Rptr. 435 (Cal.Ct.App.1968), both of which predate the
       seminal case of *Johnson v. California*, in which the California Supreme Court

28       rejected a literal interpretation of the word "discretionary," see *McQuirk*, 189 F.3d

at 798-99. As such, they are no longer reliable indicators of California law. See *Sanborn v. Chronicle Publ'g* Co., 18 Cal.3d 406, 414-15, 134 Cal.Rptr. 402, 556 P.2d 764 (1976). Similarly, the case of *Kemmerer*, 200 Cal.App.3d 1426, 246 Cal.Rptr. 609, employs an incorrect definition of "discretionary" actions and relies on cases predating *Johnson*, see *Chapin*, 2007 WL 1660740 at (dismissing Kemmerer on similar grounds). The case of *Eldridge v. Sierra View Local Hospital District*, 224 Cal.App.3d 311, 273 Cal.Rptr. 654 (Cal.Ct.App.1990), in turn relies on *Kemmerer* and does not discuss the meaning of "discretionary" actions. Accordingly, *Taylor* and other cases applying the current definition of "discretionary" carry more weight.

(Order, Docket No. 48, p. 6 *Harmston v. CCSF*, Attachment "A" hereto).

The nature of the particular action at issue must be examined by the Court in the context of the decision-maker's position. *Caldwell*, 10 Cal.4th at 981, 42 Cal.Rptr.2d 842, 897 P.2d 1320 ("The fact that an employee normally engages in discretionary activity is irrelevant if, in a given case, the employee did not render a considered decision." (internal quotation marks omitted)). Judge Illston rejected precisely this same argument in *Harmston*. As stated succinctly by Judge Illston in *Harmston*, "Such a nuanced examination cannot be made on the bare pleadings now before the Court." *Id.*at p7 .

Furthermore, Government Code § 821.6 does not immunize Fong from plaintiffs' retaliation claim. Section 821.6 applies only to injuries caused by the institution or prosecution of an investigation or proceeding. *Kemmerer*, 200 Cal.App.3d at 1436-37, 246 Cal.Rptr. 609. That is not the case here, as there were no proceedings prior to the imposition of the monitoring that constitutes the retaliation in this matter.

**C.       PLAINTIFFS HAVE STATED A CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS.**

As set forth above, the Chief's actions alleged herein are not privileged; therefore the City's argument that it cannot be held liable for intentional infliction of emotional distress is inapposite. The retaliation and the intentional infliction of emotional distress stem from the same actions by the Chief: imposition of the monitors on Officers Lewis and Cohen. Fong's immunity from liability for this claim necessarily tracks her immunity for retaliation.

P&A IN OPPOSITION TO MOTION TO DISMISS

1

## IV.  CONCLUSION

2       The claims of Officers Cohen and Lewis in this matter arose long after the claims at

3   issue in the *Harmston*  matter; they derive from a different set of facts, with different protected

4   activities and different adverse employment actions.  As such, they have not been pleaded in the

5   *Harmston* matter and could not possibly have been pleaded in the *Harmston* matter because they

6   had not yet occurred.

7       Chief Fong is not immune from liability under Government Code Section 820.2 nor

8   Section 820.6 for the reasons set forth above and exhaustively detailed by Judge Illston in the

9   *Harmston* matter.  The cause of action for intentional infliction of emotional distress is based

10   upon the same actions taken by Fong as alleged for retaliation; therefore, she is not immune from

11   liability for intentional infliction of emotional distress.  Defendants' motion to dismiss should

12   therefore be denied.

13   Dated:  January 11, 2008                    LAW OFFICES OF WAUKEEN Q. McCOY

14

15

16                                              By _____
                                                WAUKEEN Q. McCOY
17                                              Attorney for Plaintiffs

18

19

20

21

22

23

24

25

26

27

28

P&A IN OPPOSITION TO MOTION TO DISMISS